UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO REYES,<br><br>         Plaintiff,<br><br>    vs.<br><br>ROSE MARTINEZ and<br>CHINYERE NYENKE,<br><br>         Defendants. | 1:11-cv-00362-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT BE GRANTED<br>(ECF No. 37.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.      BACKGROUND**

Benito Reyes ("Plaintiff") is a state prisoner proceeding pro se with this civil rights action filed pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). This action now proceeds with Plaintiff's original Complaint, filed on March 3, 2011, against defendants RN Rose Martinez and Dr. Chinyere Nyenke ("Defendants"), for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.[1] (ECF No. 1.)

---

[1] On June 13, 2013, the court issued an order dismissing all other claims and defendants from this action, based on Plaintiff's failure to state a claim. (ECF No. 17.) Defendant LVN J. Singh was dismissed from this action based on Plaintiff's failure to state any claims upon which relief may be granted against him. (Id.)

1

On January 22, 2015, Defendants filed an amended motion for summary judgment. (ECF No. 37.)[2] On February 23, 2015, Plaintiff filed an opposition to the amended motion. (ECF No. 40.)[3] On March 2, 2015, Defendants filed a reply. (ECF No. 44.) Defendants' amended motion for summary judgment is now before the court.

## II. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This

---

[2] Defendants filed their initial motion for summary judgment on December 17, 2014. (ECF No. 30.) On January 13, 2015, Defendants filed a motion to amend the motion for summary judgment, which was granted by the court on January 16, 2015. (ECF Nos. 35, 36.)

[3] Concurrently with their amended motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 37-1.)

requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.    PLAINTIFF'S ALLEGATIONS AND CLAIMS

####     A.    Allegations in the Complaint

Plaintiff is currently housed at Ironwood State Prison in Blythe, California. The events giving rise to the claims at issue in this action allegedly occurred at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, when Plaintiff was incarcerated there.

Plaintiff alleges that on May 2, 2010, he began "experiencing severe and excruciating pain in his left testicle." (Cmp. at 3 ¶IV.2.) Plaintiff advised the building Correctional Officer (C/O), who summoned Nurse Singh [not a defendant] to Plaintiff's cell. (Id. at 3 ¶IV.4.) Nurse Singh examined Plaintiff, noting that there was no swelling. (Id. at 4 ¶8.) Nurse Singh advised Plaintiff to "put in a sick-call slip to be called routine." (Id.) Plaintiff told Nurse Singh that he had an "incisional hernia in his abdomen and it may be related." (Id. ¶9.) Plaintiff also told Nurse Singh that he had a lump in his left testicle. (Id. ¶10.) Nurse Singh walked with Plaintiff to the medical clinic, where he took Plaintiff's vital signs. (Id. ¶¶11, 12.) Plaintiff alleges that on the walk to the clinic, he was "limping in pain." (Id. ¶12.)

///

Plaintiff alleges that upon arrival at the clinic, his blood pressure was slightly elevated, indicating pain. (Id. ¶13.) Nurse Singh examined Plaintiff, noting the presence of a lump in Plaintiff's left testicle. (Id. at 5 ¶16.) Nurse Singh contacted the on-call physician, defendant Dr. Nyenke, by phone. (Id. ¶17.) Dr. Nyenke ordered Singh to administer 800 mg of Ibuprofen and to monitor Plaintiff for thirty minutes. (Id. ¶18.) Plaintiff alleges that after thirty minutes, his pain had increased such that he was breathing heavily and "hunched over in pain." (Id. ¶20.) Plaintiff told Nurse Singh that the pain had become unbearable. (Id. ¶21.) Nurse Singh contacted Dr. Nyenke and informed him that Plaintiff's vital signs were at a normal level. (Id. ¶22.) Dr. Nyenke directed Nurse Singh to place Plaintiff on "RN or MD line" for the following day, despite Plaintiff's continued complaints of severe pain. (Id. ¶23.) Nurse Singh advised Plaintiff that there was nothing more he could do for his pain and that his situation was not an emergency. (Id. at 5-6 ¶24.)

The next morning, Plaintiff was called to the clinic and seen by defendant Registered Nurse Martinez. (Id. ¶26.) Nurse Martinez observed the lump in Plaintiff's left testicle. (Id. ¶29.) Nurse Martinez diagnosed Plaintiff's condition as an infection, and sent him back to his housing unit. (Id. ¶¶30, 31.) Nurse Martinez told Plaintiff that he would see a physician the following day. (Id. ¶31.)

The next day, May 4, 2010, Plaintiff was called to the clinic by Nurse Martinez. (Id. at 6-7 ¶33.) Nurse Martinez notified Dr. Koker of Plaintiff's condition. (Id. at 7 ¶34.) Dr. Koker examined Plaintiff and ordered Plaintiff to be transported to an outside hospital emergency room to rule out testicular torsion. (Id. ¶36.) At the emergency room, Plaintiff underwent an ultrasound. (Id. ¶38.) The ultrasound revealed that there was no blood flow to the left testicle. (Id. ¶39.) The ER physician recommended that the testicle be surgically explored, and that if the testicle appeared to be nonviable or had torsion, he would recommend an orchiectomy, or removal of the left testicle. (Id. ¶40.) That same evening, an emergency operation was performed, resulting in the removal of Plaintiff's left testicle. (Id. ¶41.) Plaintiff was discharged from the hospital on May 6, 2010. (Id. at 8 ¶42.)

///

**B.     Medical Claim – Eighth Amendment**

Plaintiff claims that defendants Dr. Nyenke and RN Martinez were deliberately indifferent to his serious medical needs when they failed to provide him with adequate treatment for his symptoms of testicular torsion.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas, 611 F.3d at 1151-52; Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

///

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. However, denial of, delay of, or interference with, medical treatment can constitute deliberate indifference. Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995) (citing Estelle v. Gamble, 429 U.C. 97, 106 (1976); see Jett, 439 F.3d at 1096. Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 744, 745-46 (9th Cir. 2002).

## IV. DEFENDANTS' MOTION

Defendants argue that Plaintiff's claim fails because there is no evidence that Defendants had the requisite state of mind to constitute deliberate indifference. Defendants argue that Plaintiff is not qualified to give any medical opinion that Defendants disregarded a serious medical problem, and any such allegations are mere speculation. Defendants also argue that any insight into Defendants' subjective state of mind by Plaintiff is mere speculation.

### *Dr. Nyenke*

Defendant Dr. Nyenke supports her motion with documents from Plaintiff's medical record and her declaration. Regarding the events at issue, Dr. Nyenke declares the following:

> My only encounter with Benito Reyes was on May 2, 2010, when I was the doctor on call at SATF State prison, Corcoran. I was informed by a nurse over the telephone that Benito Reyes had complained of testicular pain. After interviewing the nurse for relevant history and physical examination, I determined his condition did not warrant emergent hospital evaluation at that time and referred him to be seen the following day by his regular doctor or return if his condition did not improve. I subsequently learned that he had testicular torsion and had an orchiectomy done two days later.
>
> It has been my practice to interact with inmates with respect for them. I would not be deliberately indifferent to their medical needs. I have never been disciplined for any treatment I provided

> my inmate patients. If an inmate is seen and/or evaluated by me, I will provide the care within the limits of my license and based on their subjective complaints and objective and observable symptoms. At all times I have treated inmates with dignity and respect in an honest effort to provide them with the appropriate medical care and treatment. At no time did I refuse to examine or treat inmate Reyes. At no time did I ever knowingly or intentionally cause inmate Reyes to experience any pain, suffering, injury or illness. I recommended the treatment for inmate Reyes based on his subjective complaint, objective and observable symptoms as determined from my interviewing the nurse while I was on call on May 2, 2010.
>
> At all times, my treatment of inmate Reyes was within the standard of care.

(Nyenke Decl., ECF No. 37-4 ¶¶5-7.)

The court finds that Defendant Nyenke has met her initial burden on summary judgment. Defendant Nyenke has come forward with evidence that establishes a lack of existence of a triable issue of fact as to whether she was deliberately indifferent to Plaintiff's serious medical need. Defendant Dr. Nyenke's declaration establishes that she was informed by LVN Singh over the telephone that Plaintiff had complained of testicular pain, and after interviewing LVN Singh for relevant history and physical examination, Dr. Nyenke determined that Plaintiff's condition did not warrant emergent hospital evaluation at that time and referred him to be seen the following day by his regular doctor or return if his condition did not improve. There is no evidence that Dr. Nyenke was aware of an objectively serious medical condition and acted with disregard to that condition. The burden therefore shifts to Plaintiff to come forward with evidence that defendant Nyenke knew of and disregarded Plaintiff's serious medical need.

The court has examined all of Plaintiff's evidence. In his opposition, Plaintiff declares that he went to the clinic complaining of severe pain and a lump in his left testicle, where Nurse Singh examined him and checked his blood pressure, which was slightly elevated.[4] (Pltf.'s Decl., ECF No. 43 ¶¶2, 3.) Nurse Singh contacted the on-call physician, Dr. Nyenke, by

---

[4] The court notes that Defendants have raised objections on hearsay grounds against some of Plaintiff's evidence. If the court refers to any of Plaintiff's evidence that has been objected to, by implication the objection is overruled.

phone. (Id. ¶3.) Dr. Nyenke ordered the nurse to give Plaintiff 800mg of Ibuprofen, monitor him for 30 minutes, and call back with results. (Id.) The Ibuprofen did not help him and the pain only increased dramatically as time passed. (Id. ¶4.) After 30 minutes, Nurse Singh again called Dr. Nyenke and informed her that Plaintiff's vital signs were now at a normal level but that Plaintiff was still complaining of severe pain. (Id. ¶5.) Dr. Nyenke ordered Nurse Singh to send Plaintiff back to his housing unit and to place him on the next day's RN or MD line. (Id.) Plaintiff was seen the next day by RN Martinez. (Id. ¶6.) Plaintiff has shown that Dr. Nyenke was aware of Plaintiff's severe pain, which constitutes an objectively serious condition, and that Dr. Nyenke treated Plaintiff's pain with Ibuprofen. Dr. Nyenke denies that she was aware of the medical condition of testicular torsion on May 2, 2010. (Deft. Nyenke's Response to Request for Admission No. 24, Exh. O to Pltf's Decl., ECF No. 43 at 67:19-23.) There is no evidence that, in the view of a medical professional, Plaintiff could not wait until the next day to be seen by an RN or MD. Judgment should therefore be entered in favor of defendant Nyenke on this claim.

### *Defendant RN Rose Martinez*

Defendant Registered Nurse Martinez supports her motion for summary judgment with documents from Plaintiff's medical record and her declaration. Regarding the events at issue, defendant Martinez declares the following:

> According to the records, Plaintiff presented on May 2, 2010, with a complaint of left testicular pain. A telephone order and consult was done with Dr. Nyenke, the doctor on call for the weekend.
>
> According to the records, I saw Plaintiff on May 3, 2010. I noted his objective symptoms and subjective complaints and notified Dr. Koker of Plaintiff's complaints. It was agreed that Plaintiff would see Dr. Koker the following day.
>
> It has been my practice to interact with inmates with respect for them. I would not be deliberately indifferent to their medical needs. I have never been disciplined for any treatment I provided my inmate patients. If an inmate is seen and/or evaluated by me, I will provide the care within the limits of my license and based on their subjective complaints and objective and observable symptoms. At all times I have treated inmates with dignity and respect in an honest effort to provide them with the appropriate medical care and treatment. At no time did I refuse to examine or

> treat inmate Reyes. At no time did I ever knowingly or intentionally cause inmate Reyes to experience any pain, suffering, injury or illness. My only role in this matter was on May 3, 2010, when I noted his complaints and notified Dr. Koker.
>
> At all times, my treatment of him was within the standard of care for registered nurses.

(Martinez Decl., ECF No. 37-5 ¶¶4-7.)

The court finds that defendant Martinez has met her initial burden on summary judgment. Defendant Martinez has come forward with evidence that establishes a lack of existence of a triable issue of fact as to whether she was deliberately indifferent to Plaintiff's serious medical need. Defendant Martinez' declaration establishes that she saw Plaintiff on May 3, 2010, noted his objective symptoms and subjective complaints, and notified Dr. Koker of Plaintiff's complaints. She also declares that "[i]t was agreed that Plaintiff would see Dr. Koker the following day." (Martinez Dec. ¶5.) There is no evidence that defendant Martinez was aware of an objectively serious medical condition and acted with disregard to that condition. The burden therefore shifts to Plaintiff to come forward with evidence that defendant Martinez knew of and disregarded Plaintiff's serious medical need.

The court has examined all of Plaintiff's evidence. In his opposition, Plaintiff declares that on May 3, 2010, he met with defendant RN Martinez who examined him, noting that his testicles were swollen and there was a lump on his left testicle. (Pltf.'s Decl., ECF No. 43 ¶6.) RN Martinez told Plaintiff that he had an infection but did not provide him with pain medication or antibiotics. (Id.) According to RN Martinez, Plaintiff agreed to take Ibuprofen for pain and already had Ibuprofen, (Pltf's Decl., Exh. O at 70:13-22; Deft. Martinez' Response to Requests for Admission Nos. 11, 12), and Plaintiff declares that he had Ibuprofen in his cell, (Pltf.'s Decl. ¶12). RN Martinez sent Plaintiff back to his housing unit and told him he would see a doctor the next day. (Id. ¶6.) Plaintiff declares that he never agreed to wait to see a doctor. (Id. ¶13.) The next day, May 4, 2010, RN Martinez called Plaintiff to the clinic and informed Dr. Koker of Plaintiff's complaints. (Id. ¶7.) Dr. Koker ordered that Plaintiff be transported to an emergency room to rule out testicular torsion. (Id.) Plaintiff was taken to

Mercy Hospital where an emergency operation was performed, resulting in the removal of his left testicle.  (Id. ¶8.)

Plaintiff has shown that defendant RN Martinez was aware that Plaintiff was suffering pain, which constitutes an objectively serious condition, and that RN Martinez treated Plaintiff's pain with Ibuprofen.  There is no evidence that, in the view of a medical professional, Plaintiff could not wait until the next day to be seen by an RN or MD.  At most, Plaintiff shows a disagreement of opinion about Plaintiff's medical care, which does not state a claim under § 1983.  Judgment should therefore be entered in favor of defendant Martinez on this claim.

## V.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the court finds no evidence of that a genuine issue of material fact remains for trial, and Defendants' amended motion for summary judgment should be granted.  Accordingly, **IT IS HEREBY RECOMMENDED** that Defendants' amended motion for summary judgment, filed on January 22, 2015, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **September 1, 2015**                **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE